IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EVELYN HARRELL** | : | **CIVIL ACTION** |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| **PATHMARK et al.,** | : | **No. 14-5260** |
| *Defendants*. | : | |

**M E M O R A N D U M**

PRATTER, J.                                                                                                                    FEBRUARY 26, 2015

      Evelyn Harrell alleges that she suffered an injury after slipping and falling on a wet floor in a Pathmark store. Because she has not presented sufficient evidence that Pathmark had constructive notice of any wet condition of the floor, the Court grants Pathmark's Motion for Summary Judgment.

**I.**       **Background**[1]

      On the sunny afternoon of May 1, 2013, Ms. Harrell was shopping for groceries in a Philadelphia Pathmark store. As she walked into the deli section of the market, her legs slipped out from under her and she fell to the floor face-first. When Ms. Harrell got up from the floor, she noticed something wet on her pants. Sure enough, on the floor where she had fallen was a collection of what appeared to be water. This liquid was not collected in a large pool—she noted that the amount of liquid "wasn't a lot. It wasn't like a puddle"—but rather "was maybe like, say if somebody wasted some water in a cup or something." Mot. in Opp. to Summ. J. Ex. A. 32:12-15 (hereinafter "Harrell Depo.").

---

[1] This factual recitation represents the record facts and reasonable inferences most favorable to Ms. Harrell as the non-movant.

Ms. Harrell claims that Pathmark's negligence resulted in her slipping on a dangerously slick surface. Pathmark moved for summary judgment arguing that Ms. Harrell has failed to prove that Pathmark had actual or constructive notice of the wet condition of the floor.

**II.      Standard of Review**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When the party seeking summary judgment does not bear the burden of persuasion at trial, the moving party may meet its burden at summary judgment by showing that the nonmoving party lacks sufficient evidence to create a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). The court must not weigh the evidence or make credibility determinations. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). Nevertheless, the party opposing summary judgment must support each essential element of his or her opposition with concrete evidence in the record. *Celotex*, 477 U.S. at 322-23. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

**III.     Analysis**

Pennsylvania law requires that a plaintiff alleging negligence prove four essential elements: "(1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005). Because Ms. Harrell was an "invitee" of Pathmark—that is, she was invited onto Pathmark's premises "for a purpose directly or indirectly connected with business dealings with the possessor of the land," Restatement (Second) of Torts § 343—Pathmark owed Ms. Harrell the duty to protect her from foreseeable harm. *See Slater v. Genuardi's Family Mkts.*, No. 13-794, 2014 WL 4763336, at *2 (E.D. Pa. Sep. 24, 2014). However, Pathmark's duty only would have arisen if Pathmark knew of, or by the exercise of reasonable care would have discovered, a condition that Pathmark should have realized involved an unreasonable risk of harm to an invitee such as Ms. Harrell. *See id.* (citing Restatement (Second) of Torts § 343). Accordingly, Ms. Harrell must prove either that Pathmark played a role in creating the harmful condition or that Pathmark had either actual or constructive notice of the harmful condition. *See id.*

This case turns on whether Pathmark had constructive notice of the collection of liquid. Ms. Harrell has not provided any evidence that Pathmark played a role in creating the collection of liquid on which Ms. Harrell slipped or that Pathmark had actual or constructive notice of it. There is no evidence or argument here that Pathmark created the collection of liquid, nor is there evidence or argument that Pathmark had actual notice of it. Therefore, the Court will evaluate the parties' respective positions as to constructive notice.

Constructive notice is a legal fiction in which the court presumes notice "from the existence of facts and circumstances that a party had a duty to take notice of." Black's Law Dictionary 1227 (10th ed. 2014). Thus, "[w]hat constitutes constructive notice of a dangerous condition depends on the circumstances of each case." *Slater*, 2014 WL 4763336, at *3. Courts look to the nature of the dangerous condition, its location on the premise, its likely cause, the opportunity the defendant, as a reasonably prudent person, had to remedy it, and, crucially, the time elapsing between when the dangerous condition arose and when the accident occurred. *Id.* The amount of time that elapsed is crucial because "[i]f a dangerous condition only existed for a very short period of time before causing any injury, then the possessor of the land, even by the exercise of reasonable care, would not discover the hazard, and thus would owe no duty to protect invitees from such a hazard." *Id.* (quotation marks and citations omitted).

Ms. Harrell has not presented the Court with evidence from which a reasonable jury could infer that Pathmark had constructive notice of the wet condition of the floor. She has presented no evidence of when or how the liquid appeared on the floor. She testified in her deposition that the liquid was clear and was not collected in a large pool, saying "it wasn't a lot [of liquid]. It wasn't like a puddle." Harrell Depo. 32. Indeed, a photograph taken of the scene after the fall showed no visibly wet condition on the floor, Mot. for Summ. J. Ex. C (Doc. No. 11-3), and the assistant store manager did not detect any liquid on the floor when he wiped the area where Ms. Harrell fell, Mem. in Opp. to Summ. J. Ex. B. 12-13 (Doc. No. 12-1) (hereinafter "Lewis Depo.").

Ms. Harrell's arguments highlight the lack of evidence as to when and how the liquid got on the floor. Ms. Harrell notes that Pathmark "*anticipate*[*s*] that spills will occur in its stores," and that "the aisle where Plaintiff slipped and fell was inspected continuously throughout the day

4

by Pathmark supervisors and employees prior to the incident." Mem. in Opp. to Mot. for Summ. J. 8-9 (emphasis in original). But this evidence actually works against Ms. Harrell, who has not provided any evidence that the liquid was there for a sufficient amount of time so that an inspection would have discovered it. *Cf. Slater*, 2014 WL 4763336, at *4 ("There is simply no way for this Court or a jury to know whether the dangerous condition appeared five minutes before Slater's fall or an hour before her fall, yet went unnoticed by the employee conducting the sweep. Because the jury cannot guess or speculate as to the length of time that the hazardous condition existed, the Court must decide the issue as a matter of law."). The mere fact in this case that there was not a set schedule for routine inspections or documentation of them is not sufficient evidence that Pathmark had constructive notice of the condition. *Cf. Felix v. GMS, Zallie Holdings, Inc.*, 501 F. App'x 131, 135 (3d Cir. 2012) (finding an alleged lack of monitoring was insufficient evidence of constructive notice where a property owner did not have set times or a written log for inspections, but where the "maintenance people are told when they are cleaning and mopping to get around the store and check"). Accordingly, there is insufficient evidence that Pathmark had constructive notice of the wet condition upon which Ms. Harrell slipped.[2]

Finally, although Ms. Harrell does not specifically invoke the issue, one could read the concluding paragraphs of her Memorandum opposing summary judgment as contending that the

---

[2] The case Ms. Harrell primarily relies upon in support of her position underscores just how bare the record is of evidence in this case. In *Filippova v. Community Bank and Trust Co.*, No. 09-6184, 2011 WL 7272289 (Pa. Com. Pl. Sept. 15, 2011), the plaintiff was in a bank owned by the defendants when she slipped on what she testified was water "'spread' in a 'big' shape and located to her left, right and 'all around' her on the floor." *Id.* The weather on the day the plaintiff in *Filippova* fell was snowy, and there was evidence in the record that the bank employees knew that on such snowy days, water was likely to accumulate near the door to the bank. *Id.* In contrast, there is no such evidence here. Ms. Harrell testified that there was only a small amount of water at the site where she slipped, and the weather outside that day was sunny. Accordingly, *Filippova* does not aid Ms. Harrell's cause.

Court should draw an adverse spoliation inference against Pathmark. The Memorandum notes that Pathmark had working security cameras in the store, but the video footage from the time and date of the accident was not preserved and has now been recorded over.[3] The Court, appreciative of this potential issue, *sua sponte* scheduled a hearing to prompt the parties to address the issue on whether the Court could or should draw an adverse spoliation inference due to the absence of video evidence. The Court concludes that a spoliation inference would not be appropriate here.

The entirety of the "record" on the lost video footage, other than subsequent snippets of explanations from counsel in responses to interrogatories and requests for production, comes from a deposition with Mr. Nafiesh Lewis, an assistant manager at the Pathmark store where Ms. Harrell allegedly fell. Mr. Lewis testified at his deposition that there were security cameras operating at the time of and in the general area of the accident. However, these videos were not preserved. Mr. Lewis testified that he emailed the loss prevention manager, Ric Jenkins, to come and save the footage by burning it to a disk. Mr. Lewis may have also called Mr. Jenkins about the video footage. However, Mr. Jenkins never came to save the footage. Mr. Jenkins has since left Pathmark's employ. Other than the initial phone call and email to Mr. Jenkins, Mr. Lewis did not follow up about the video footage. The video tape with the footage from the date of the incident was eventually reused, and the footage was recorded over and lost.

---

[3] The specific language from the Response to the Motion for Summary Judgment reads:

> Also, at the time of the accident there were working security cameras in the store. (Exhibit B, page 35). Despite that, these videos were never preserved. (Exhibit B, page 35). Mr. Lewis testified he sent an email to loss prevention requesting the preservation of the security footage and yet no one from loss prevention ever came to preserve the videos. (Exhibit B, page 37). Additionally, no one followed up with loss prevention to ask why they failed to show up to the Pathmark. (Exhibit B, page 40).

Mem. in Opp. to Summ. J. 10. ("Loss prevention" presumably is an internal Pathmark operations department.)

"Courts may impose spoliation sanctions for destruction of evidence where: (1) the evidence was within the alleged spoliator's control; (2) there has been actual suppression or withholding of the evidence; (3) the evidence was relevant; and (4) it was reasonably foreseeable that the evidence would be discoverable." *Baynes v. The Home Depot U.S.A., Inc.*, No. 09-3686, 2011 WL 2313658, at *4 (E.D. Pa. June 9, 2011) (citation omitted) (Schiller, J.). The party seeking a spoliation sanction bears the burden of proving these factors. *Malibu Media, LLC v. Doe*, No. 14-1280, 2015 WL 412855, at *4 (E.D. Pa. Feb. 2, 2015) (Dalzell, J.).

From the facts available here, the Court concludes that sanctions for the spoliation of evidence are not appropriate. While there is no dispute that the video footage was in the control of Pathmark, there is no evidence that the video footage would have been relevant. First, there is simply no evidence that any video footage captured Ms. Harrell's fall at all. Mr. Lewis testified at his deposition only that (a) there were security cameras within the store, (b) the security cameras were working on the day of the accident, and (c) that they were "near the area of the deli counter." Lewis Depo. 35-36. There is no testimony that the video camera captured Ms. Harrell's fall, nor is there evidence in the record that the video camera was pointed at the location of Ms. Harrell's fall and would have captured her fall on film. Therefore, Ms. Harrell has not satisfied her burden of demonstrating that the video footage would have been relevant.

The Court also cannot conclude based on the evidence before it that the video evidence was actually suppressed or withheld. Nor can it conclude that litigation was reasonably foreseeable at a time when the video footage presumably still existed. "The Third Circuit has recently clarified that '[a] finding of bad faith is pivotal to a spoliation determination.'" *First Senior Fin. Grp. LLC v. Watchdog*, No. 12-1247, 2014 WL 1327584, at *7 (E.D. Pa. Apr. 3, 2014) (quoting *Bull v. United Parcel Service, Inc.*, 665 F.3d 68, 77 (3d Cir. 2012)). "Ordinary

7

negligence does not suffice to establish spoliation. The party asserting spoliation must prove that evidence was intentionally withheld, altered, or destroyed. Thus, no unfavorable inference of spoliation arises if the evidence was lost, accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." *Id.* (citations omitted). As the court explained in *First Senior Financial Group*:

> After the Third Circuit's decision in *Bull*, courts within this Circuit have sought to distinguish conduct constituting bad faith from conduct equivalent to mere accidental destruction or loss of evidence. Typically, the destruction of evidence by an automated system pursuant to an even-handed policy, such as the re-recording of videotapes in the usual course of business, does not constitute bad faith. In these situations, the lack of bad faith stems in part from the fact that the party controlling the evidence had no reason to believe that it would be required in litigation. Similarly, imperfect measures that fail to preserve some evidence from destruction by an automated system do not establish bad faith if active efforts were made to preserve other evidence.
>
> On the other hand, "a reckless disregard for the consequences of an intentional and conscious destruction of evidence, previously specially preserved for purposes of subsequent litigation, at a time when litigation is necessarily foreseeable," may constitute bad faith. Additionally, a party's obfuscation or lying can show that she is acting in bad faith.

*Id.* at *7-8 (citations omitted).

"Whether or not litigation is 'reasonably foreseeable' is a flexible standard, and courts exercise discretion in a spoliation inquiry. A duty to preserve is not triggered [ ] at the mere onset of a potential claim or litigation, but litigation need not be imminent either. The obligation to preserve evidence arises when *the party has notice* that the evidence is *relevant* to litigation . . . as for example when a party should have known that the evidence may be relevant to future litigation." *Rogers v. Allstate Ins. Co.*, No. 11-7776, 2012 WL 5250513, at *5 (E.D. Pa. Oct. 23, 2012) (emphasis in original) (quotation marks and citations omitted).

Here, Ms. Harrell has not presented evidence of bad faith. Even in a highly litigious community or culture, just because a person falls in a grocery store does not mean that litigation

8

is imminent. Here, the lawsuit was not filed until August 2014, over a year after the incident and far past the maximum of about 90 days that the video footage would have survived before being automatically re-recorded. While the incident itself did cause Mr. Lewis to create an incident report, nothing about it was so immediately dramatic to create an objectively foreseeable likelihood of litigation. As recounted, after her fall Ms. Harrell got up and walked out of the store under her own power, apparently without stating she intended to sue or words to that effect. Any water on the floor was no more than the volume held in a cup of water. There is no evidence that Pathmark was on notice of the alleged extent of her injuries, other than the pain in her knee that she (may have) complained about after the incident, prior to the filing of this lawsuit.[4] There is no evidence *in the record* that Ms. Harrell threatened a lawsuit at the store or at any time prior to bringing her lawsuit, and, crucially, there is no evidence *in the record* that Ms. Harrell asked that the video evidence be preserved.[5] Just because Mr. Lewis took initial steps to preserve the video does not mean that litigation was reasonably foreseeable.

Pathmark's actions, in this context, appear to the Court to be at the very most mere inadvertent negligence. Given the lack of evidence that a lawsuit was reasonably foreseeable, the Court cannot conclude that Mr. Lewis and Mr. Jenkins acted in bad faith by failing to preserve the video footage before it was recorded over. Perhaps the failure to preserve the video footage

---

[4] The record as presented to the Court is unclear on whether she complained about any pain at the time.

[5] At the spoliation hearing, counsel for Ms. Harrell did reference a letter Ms. Harrell's prior counsel had sent Pathmark requesting that the video evidence be preserved. *However, this letter was never made part of the record in this case.* It was not filed in response to the Motion for Summary Judgment, was not exchanged in discovery, was not filed with a motion for sanctions for spoliation of evidence (indeed, no such motion was ever filed, even after the Court *sua sponte* scheduled a hearing on the issue of spoliation), was not introduced as evidence at the spoliation hearing (indeed, counsel for Ms. Harrell, curiously, introduced no evidence at the spoliation hearing), and was not included in a motion to reopen the record. The last of these glaring absences speaks the loudest to the Court, having specifically invited counsel for Ms. Harrell to file a motion to reopen the record if he wanted the Court to consider the letter. Indeed, and without explanation, no such motion was filed.

amounts to negligence, but a finding of spoliation requires more than mere negligence. And without evidence that the video footage would have been relevant, without evidence showing that Mr. Lewis and Mr. Jenkins should have known Ms. Harrell would bring a lawsuit, and without evidence that there was some bad intent or ill motive behind the failure to act, the Court cannot conclude that sanctions for spoliation are appropriate—let alone that an adverse inference sanction would be appropriate.[6]

## IV. Conclusion

Therefore, because Ms. Harrell has presented no evidence that Pathmark had constructive notice of a dangerous condition resulting in her slip and fall, the Court grants Pathmark's Motion for Summary Judgment. An appropriate order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

---

[6] To determine which spoliation sanction is appropriate, the court must consider: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994). "When appropriate, a court may impose any potential sanction including: 1) dismissal of a claim or granting judgment in favor of a prejudiced party; 2) suppression of evidence; 3) an adverse inference, referred to as the spoliation inference; 4) fines; and 5) attorneys' fees and costs." *Ogin v. Ahmed*, 563 F. Supp. 2d 539, 545 (M.D. Pa. 2008).